ESSEX COUNTY ORPHANS COURT.

In the matter of the estate of EDWARD McDOWELL, deceased.

[Decided May 12th, 1927.]

A next of kin or other interested party will not be permitted to set aside the will of a monomaniac, where it is shown that his insane delusion did not affect the decedent's testamentary disposition as to such objector, though it did affect provisions of the will as to another person who was a next of kin but who interposed no objection to the will.

*Mr. Ralph E. Lum,* for the appellant.

*Messrs. Child & Shipman,* for the respondent Art Students League.

*Mr. Robert M. Boyd, Jr.,* for the respondent Montclair Trust Company.

FLANNAGAN, J.

This is an appeal from the probate by the surrogate of Essex county of the alleged last will and testament of Edward McDowell, deceased. The alleged will was executed August 4th, 1925. The ground of appeal is that the deceased lacked testamentary capacity.

The deceased was a man of considerable means, possessing some $25,000 in personalty and having the power under his father's will to dispose, by his own will, of the income of some $200,000, which income he himself enjoyed thereunder during his lifetime.

He was in poor health, had little occupation, did some painting, was much interested in· art and spent a large part of his time in travel with his wife, who was his devoted and almost constant companion.

To those with whom he came in ordinary contact he betrayed no mental peculiarity amounting to any disorder; he ordinarily attended to his own investments and went about

his daily affairs in a way which might be called irritable, finnicky, suspicious and perhaps eccentric, but nothing more.

He was, however, a monomaniac, the subject being his wife's loyalty.

The testator was twice married. His widow, whom he married in 1913, was some years his junior, being his second wife. His first wife he had divorced on the ground of adultery, and he was under the fixed delusion that his second wife was inconstant in her affection and loyalty to him.

He had told his wife that she was to succeed to his wealth, but without indicating to her any change in his intention; he employed a stranger, who was a New Jersey attorney, to make the will in question without her knowledge, cutting her off with $5,000 and leaving the remainder of his estate to the Art Students League of New York in memory of his father and in trust for the education of deserving and talented art students abroad and providing that this disposition should stand notwithstanding the birth thereafter of any children.

At one time, suddenly leaving his wife, he secretedly went to Europe and wrote his sister not to disclose his whereabouts. Nevertheless, immediately upon his arrival in Europe he cabled his wife to join him there, which she did.

At a time when a physical examination by a physician of his wife was required he stood outside the door with a drawn revolver; he employed a lawyer and caused his wife to be frequently shadowed by detectives; caused certain slips of paper, written by a Japanese servant in that language, to be translated, suspecting that they concerned his wife; discussed his wife's fidelity with an officer of the bank with which he did business, and left a letter to be delivered to her after his death referring to a man in Switzerland and indicating his jealousy of her in respect to attentions from him or others.

It is not maintained that there are any facts upon which any suspicions or accusations against his wife could be rationally founded. She was constant in her affection and loyalty and in spite of all her reasoning he persisted in harboring his insane notion against her.

The deceased died childless, possessed of no real estate and leaving his widow as his only next of kin. There is no doubt but that deceased's monomania affected his will as to the provision concerning his wife and that it was the direct cause of those provisions.

There is no objection raised, however, by the widow to the probate of the will but the appeal is taken by decedent's married sister, Mrs. E. Clayville-Smith, who is the sole objector to its probate.

The sister claims to be interested because under the provisions of her father's will the income from the $200,000 above referred to passes to her in the absence of the exercise by her brother (the deceased) of the power of disposition thereof. If no valid will by him exists, then no power of disposition has been exercised.

In May, 1913, some two years prior to the making of the instant will, the deceased had employed a New York lawyer, who was his regular counsel, to prepare a will. The draft of this will (which, apparently, was never executed) made no provision for the sister and left her nothing, as does the instant will. The sister was already well provided for by her father's will, enjoying the income upon some $200,000 for life, and though she lived in Baltimore and the deceased was ordinarily unoccupied and was frequently in or about New York City, they had not seen each other for a period of some nine years before deceased's death though writing to each other from time to time. The only occasion during the nine years preceding his death when the deceased saw any member of his sister's family was a recent one when the sister's daughter was in New York and was invited with a friend of hers to luncheon by decedent, and when at or about the same time, she, with the same friend, stopped for a week at the hotel in Summit, New Jersey, where the deceased was staying, not as his guest but at her own expense.

It is quite manifest that the deceased had no desire to leave his sister anything. If he had, it would have been reflected in the draft of one or the other of these wills. The natural result of the monomaniacal delusion, which excluded

the wife from any substantial part of his bounty, would be to invite a testamentary disposition favorable toward the sister rather than to prejudice or repel one. Moreover, it was not altogether unnatural that the decedent who had studied art at the Art Students League, who was himself an artist, interested in art matters and whose father was interested in art before him, should have preferred to create from his father's estate a trust in memory of his father for the education of art students, rather than to further enrich a sister who was married, well provided for in her own right, and whom he had not seen, or made the slight effort necessary to see, for a period of nine years before his death.

I am fully satisfied that although his partial derangement affected the mind of the deceased adversely to his wife and rendered him incapable of right reason as to her he was fully competent to reason rightly in regard to his sister and that his monomania had no adverse effect whatever upon his testamentary attitude towards her.

Under these circumstances the question is whether the court will refuse probate of the will at her instance alone.

Two views are suggested: *First,* that if a will is affected by an insane delusion, then it is the product of an insane mind, hence, is invalid, and any heir, next of kin or interested party is entitled to have it so declared. *Second,* that an insane delusion to be fatal to a will of a monomaniac must not only affect the will but must adversely affect the objector.

The objector, in the instant case (the sister, Mrs. Clayville-Smith), takes the first view while the proponent urges the second, contending that the presence of the delusion against the loyalty of the wife, not having adversely affected decedent's disposition towards the sister, does not entitle the sister to set aside the will in the absence of objection on the part of the wife.

A single case, that of *Stackhouse* v. *Horton, 15 N. J. Eq. 202,* is cited by proponent in support of that contention. That case was decided in the prerogative court by the then ordinary, Chancellor Green.

In the *Stackhouse Case* the will of one Esther Horton was attacked on the ground of testamentary incapacity due to an alleged insane delusion applicable to her nephew, Silas Horton, and no one else. Silas Horton was not an heir-at-law or next of kin but the testatrix was under a moral obligation to devise to him a certain farm, and up to the time of the occurrence out of which the supposed delusion was alleged to have arisen, she had recognized such obligation and declared her intention to fulfill it. She, however, in her will excluded Silas entirely. The case, as I read it, was decided upon three grounds—*first,* that a court will not refuse probate of a will unless by so doing it can restore the caveator to the position which he has lost by the intervention of the instrument. That the caveator, Silas Horton, not being an heir-at-law, it would therefore be of no avail to him to set the will aside and it would therefore not be done at his instance; *second,* that as to the caveators, who were heirs-at-law, since it was shown that the insane delusion against Silas Horton did not operate to affect the decedent's testamentary disposition toward them, the instrument would not be set aside at their instance; *third,* that no insane delusion actually in fact existed in the mind of testatrix since there were facts and circumstances before her from which as a foundation the conclusions she drew could rationally be drawn, though such conclusions may have been erroneous.

If the decision in the *Stackhouse Case* is based upon the second ground, it is controlling on this court in the instant case. It is contended it was not a ground of the decision.

The discussion by Chancellor Green in connection with the second ground is interspersed in the opinion with the discussions of the other grounds. I will, for charity, attempt to separate, as far as possible, the language discussing the second ground, as follows (all italics ours) :

"In examining this question it is important that we should consider the connection which existed between Esther and Silas Horton and ascertain how the fact of Esther Horton's partial derangement, confined to her nephew [Silas], can legally affect the disposition of the decedent's estate; for a

person may be a monomaniac—the subject of a partial derangement towards a particular individual—and this derangement may be the cause of depriving such individual of the bounty of a testator which he otherwise would have enjoyed and yet the will be valid and obnoxious to no principle of law. Instance the case of an individual having two sons, his only heirs-at-law, and a nephew to whom he is under peculiar moral obligations to leave a liberal portion of his estate. He acknowledges his obligations and he intends that his nephew shall be an object of his bounty and shall share with his legal heirs his whole property. He suddenly conceives the notion that his nephew has become a king or an inheritor of immense wealth, and under this vain delusion he makes his will leaving his whole estate to his sons, to one of them two-thirds and the remaining third to the other, the proportion between the two sons being in nowise affected or having no connection with the delusion towards the nephew. Can the validity of such a will be questioned? *Cui bono?* Not by the nephew * * *. *Nor can the son who takes the lesser portion of the estate impeach the will for the delusion in no way affected the disposition made to him.* * * * Silas Horton is not an heir-at-law of the decedent. The inquiry is therefore a proper one, what interest has Silas Horton in the question; *and as to the other caveators, did the delusion if any existed toward Silar Horton, affect in any way the dispositions made by the decedent of her property in respect to them?* * * *" (Pages 225, 226.)

The court, taking up the first ground, then shows how the delusion affected the interest of Silas Horton, but that to set aside the will would be of no avail to him. Continuing, the court says:

"*Does anyone else show that such delusions affected his interest in the decedent's estate?*

"Susan McCullum [an heir-at-law], who *caveats* against this paper, is a sister of decedent. It is proved that Esther Horton's state of mind toward Silas has in no manner affected her interest. She gets by this will, if sustained, $100.

Essex County Orphans Court—In re McDowell.

By four other wills executed by the decedent and canceled, one as early as 1843, nothing was given to his sister. Aaron Horton, a brother and heir-at-law, gets $100 by this will. Nothing has been given to him by any of the prior wills. Curtis Coe, another heir-at-law, being one of the children of a deceased sister, who also has filed a *caveat,* takes nothing by this will. Neither he, his mother nor any of the family had been mentioned in any of the wills of decedent. It is proved, as clearly as any such fact can be established, that the feelings of Esther Horton towards her nephew did not in any way affect these caveators. I feel perfectly satisfied in coming to the conclusion that if the derangement or monomania towards Silas Horton did exist, as contended for, it is no objection to admitting this writing to probate." (Page 227.)

Could this language have been used by the ordinary unless it was the court's intention to hold as one of the grounds of the decision that the caveators, heirs-at-law, were not entitled to have probate of the will refused where it appeared that the alleged monomaniacal delusion did not concern the testatrix's testamentary inclination towards them? I am of opinion that the answer must be in the negative.

It is argued for appellant, that the Stackhouse decision turns upon the question whether the delusion affects an heir-at-law or person who can be restored to the position he has lost by the intervention of the instrument. This is, of course, true as to the first ground of the decision, but as to the second ground the decision plainly turns upon the question whether or not the delusion affects adversely the objector who seeks to set it aside. It is plain that the insane delusion, as assumed, affected Esther Horton's will, and that but for such delusion she would have made a very different one; nevertheless, as the heirs-at-law, who filed *caveats,* were not affected adversely by the delusion they were not permitted to have the will set aside on the ground that the delusion affected the will. The appellant attempts to distinguish the *Stackhouse Case* on the further ground that

the monomania in that case was with respect to a person who had no interest, whereas in the instant case the wife against whom the monomania existed is interested, being a next of kin. The test is not, that the delusion be with respect to an heir-at-law or next of kin. This is plain without illustration, but a modification of the illustration used by Chancellor Green furnishes an instance which makes this obvious. In the chancellor's illustrations, a nephew, who is not an heir-at-law or next of kin, was insanely believed by testator to be "a king or the inheritor of immense wealth." He was therefore excluded by testator from his bounty. Let us modify the illustration by assuming the monomania to have been, that the nephew, who was in fact a king and immensely wealthy, had suddenly become a pauper and that under that vain delusion testator left him substantially his entire fortune. It is patent that either of the decedent's sons would then have been entitled to set the will aside though the monomania was with respect to one not an heir-at-law or next of kin.

It would seem from all that was said in the *Stackhouse Case* that in order to set aside the will of a monomaniac the following situations must coincide:

*First.* The delusion must be of such a character as to have affected or been an operating cause of the testamentary disposition made.

*Second.* The court must be in a position to restore the objector to an advantage or position, which he has lost by the interposition of the instrument.

*Third.* It must not appear that the delusion did not affect testator's testamentary disposition toward the objector.

The appellant cites *In re Long, 89 N. Y. Supp. 555,* a case decided by the surrogate of Kings county, New York, in 1904. The case is entirely in point and sustains the appellant's present contention, though one passage in the opinion somewhat weakens it. This passage suggests that the opinion may have been based to some extent upon the particular statute of New York under which the surrogate was proceeding. The surrogate says:

Essex County Orphans Court—In re McDowell.

"By code section 2622 the surrogate is required, even if there is no contest, 'to inquire particularly into all the facts' showing an intention to only admit a will of a perfectly sane person to probate." (Page 559.)

The surrogate further says: "As the contest is always made by the party disinherited, I am unable to find any case similar to this." (Page 559.)

Counsel for the respective parties now before this court seem to find themselves in a very similar position as the surrogate did, since the only cases cited, which seem to me in point, are the two already referred to. An examination by the court has proved equally unsuccessful.

I find that the *Stackhouse Case* has been frequently cited in the courts of our state; six times by the court of errors and appeals and four times by the prerogative court. While never, of course, cited upon the precise point now before this court, it has always been cited with approval. Entertaining the views above expressed as to the holding of our prerogative court in that case, the appeal herein must fail and the will must be admitted to probate.